IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 18-10798 |
| W Resources, L.L.C. | Chapter 11 |
| *Debtor*. | |

MOTION FOR AUTHORIZATION UNDER
11 U.S.C. § 364 TO OBTAIN POST-PETITION CREDIT

W Resources, L.L.C. (the "**Debtor**") moves this Court for authorization, pursuant to 11 U.S.C. § 364(b), to obtain credit from Callais Capital Management, LLC ("**Callais**") sufficient to allow the Debtor to refinance and pay-off a debt owed by the Debtor to BTR Hangar Properties, LLC ("**BTR**"), successor in interest to Hancock Whitney Bank ("**Whitney**"). In support, the Debtor respectfully represents as follows:

1.

The Debtor filed a voluntary petition under chapter 11 of title 11, United States Code, on July 23, 2018. No trustee has been appointed in the Debtor's case and the Debtor continues to operate as a debtor-in-possession.[1]

2.

The Debtor owns a variety of properties and interests therein. While the Debtor has numerous assets of value, some of these assets have value over and above the amount of the debts for which such assets stand as security. Under the Bankruptcy Code, specifically, 11 U.S.C. § 506(b), if the value of collateral exceeds the amount of the debt for which such property stands as

---

[1] While the Debtor is a debtor-in-possession, its pre-petition sole member, Michael Worley is also a debtor in bankruptcy (17-_____, USBC, MDLA), and within the Worley personal case a trustee, Dwayne M. Murray, has been appointed. Mr. Murray, in his capacity as trustee for the Worley bankruptcy estate is acting as sole member of the instant Debtor, W Resources, L.L.C.

security, then a creditor who holds a claim secured by such property may accrue post-petition interest, fees, and other charges under certain circumstances.

3.

Of particular pertinence to this Motion is the Debtor's leasehold interest in a certain hangar located at 4303 Chuck Yeager Drive, Baton Rouge, Louisiana, located on leased property described as Tract "F" at the Greater Baton Rouge Metropolitan Airport, East Baton Rouge Parish (the "*Hangar Lease*").[2]

4.

The Debtor believes that the Hangar Lease has value in excess of at least the amount owing to the first mortgage/lien holder, BTR. BTR is the holder of a certain note and security interests originally issued by the Debtor in favor of Whitney in the original principal amount of $2,615,456.17 bearing interest at the rate of 4.50% per annum. As of April 30, 2018, the unpaid principal balance on the BTR/Whitney debt is believed to approximate $2,192,536.72. However, upon information and belief, BTR intends to assert claims for unpaid fees as well as default interest (which, under BTR note, is believed to be 21% per annum – leading to a *per diem* of $1,278.98 in accruing default interest).

5.

The Debtor has filed a motion seeking to market and sell the Hangar Lease (both ground lease and improvements). *See*, Note 2, *supra*. As part of the sale, the Debtor has obtained a stalking horse purchase offer from Callais in the amount of $3,000,000.00. As well, Callais has

---

[2] The Hangar Lease is more fully described within the motion and amended motion filed by the Debtor seeking to assume and assign its leasehold interest and sell improvements thereon. *See* P-108, P-148.

offered to refinance the Debtor's obligation to BTR in an amount necessary to pay-off the BTR obligation.

6.

The terms of financing offered by Callais are to provide a DIP loan in the amount of $2,192,536.72 (the principal amount believed to be due under the BTR claim), with 4.50% interest, per annum, with a maturity date of the earlier of (i) closing on sale of the Hangar Lease, or (ii) January 31, 2019, and if not paid at maturity, the principal balance shall accrue interest at the default rate of 8% per annum.[1] The new credit offered by Callais shall be secured by a priority mortgage and security interest in favor of Callais on the Hangar Lease and all other collateral securing the BTR Claim ("DIP Collateral"), which shall be effective upon entry of an Order granting this Motion without need for further documentation, but that the Debtor shall execute such documentation deemed necessary by Callais to evidence the credit obligation and/or mortgage and security interest to be granted.[2] Callais' mortgage and security interest in the DIP Collateral shall be first and prior over all other mortgages, liens and security interests, except for BTR's mortgage and security interests securing any residual claim which may be allowed after the principal amount of its claim is paid. The DIP loan may only be used to pay the principal amount due on the BTR claim in order to stop any arguable accrual of default interest as explained

---

[1] In the event that Callais is the successful bidder for the Hangar Lease, Callais will provide the Debtor with a credit for sums due by the Debtor to Callais against the amount of the final purchase price. Otherwise, the Debtor will pay Callais from the cash sale proceeds as provided in the motion and approved bid and sale procedures.

[2] Because Callais, as best the Debtor can tell, is immediately behind BTR on the public records (and thus, is believed to be second in priority at this particular point in time), borrowing from Callais to satisfy the BTR obligation will have the net effect of simply removing BTR's lien/mortgage interest, and Callais' mortgage security will be encumber the Hangar Lease and associated property. The net effect on the estate is simply that instead of two people holding two different mortgages, Callais, after closing, will hold one mortgage, albeit subject to a larger principal obligation. Nevertheless, from the Debtor's perspective, no additional security is required to obtain the financing, and no real effect on the estate will occur as the proposed financing simply swaps out one creditor for another.

herein. Repayment of the DIP Loan is due at the earlier of (i) closing on sale of the Hangar Lease, or (ii) January 31, 2019. The proposed DIP Order submitted herewith is incorporated herein by reference and includes other standard provisions governing DIP Loans.

7.

As noted previously, BTR arguably may claim it is entitled to a $1,278.98 per diem default interest accrual under the terms of its note, and has indicated such intent to counsel for the Debtor and counsel for Callais. Allowing the Debtor to refinance the BTR debt would eliminate this accrual on an ongoing basis (given the rate of accrual, it is possible the Debtor could face over $120,000 in default interest accrual charges alone by the time that sale of the Hangar Lease can close).[3] Upon information and belief, Callais offered to purchase the BTR loan position from BTR with the agreement between Callais and the Debtor that Callais would waive or stop the accrual of default interest under the Note, but BTR was not willing to sell its claim. BTR's position with regard to default interest accrual and unwillingness to sell its loan to Callais has necessitated this Motion whereby the Debtor seeks to borrow the money from Callais to pay-off the BTR position.[4]

8.

In evaluating whether to approve the DIP Loan, Courts consider whether the debtors are able to obtain unsecured credit, whether the transaction is necessary to preserve the value of the

---

[3] The Debtor has or will file a motion seeking to fix and liquidate the debt owed by it to BTR and asserts that under applicable Fifth Circuit precedent, the equities of this case strongly favor a severe reduction in default interest. *See*, *Bradford v. Crozier* (*In re Laymon*), 958 F.2d 72 (5th Cir. 1992); *Southland Corp. v. Toronto-Dominion* (*In re Southland Corp.*), 160 F.3d 1054 (5th Cir. 1998); *see also*, *In re Jack Kline Co., Inc.*, 440 B.R. 712 (Bankr. S.D.Tex. 2010); *In re Windmill Run Assoc., Ltd.*, 566 B.R. 396 (Bankr. S.D.Tex. 2017). Even if successful, however, a reduction in default interest may not actually eliminate further accruals of default interest by BTR (simply lower such accruals). The Debtor believes that under the circumstances it is in the best interest of the estate to fix any accrual of interest possible under 11 U.S.C. § 506(b) at the lower non-default rate of 4.50% as offered by Callais.

[4] To be clear, the Debtor seeks to borrow from Callais only such sums necessary to pay the outstanding principal amount owed under the Note. Additional fees, expenses, and other costs which may or may not be recoverable under the Note shall be paid at closing of the sale of the Hangar Lease from proceeds thereof. The Debtor reserves the right to contest all fees, interest, expenses and other costs which may be asserted by BTR.

estate, and whether the terms are fair and reasonable under the circumstances. *In re L.A. Dodgers, LLC*, 457 B.R. 308, 312-12 (Bankr. D. Del. 2011). *See also In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980). Courts grant considerable deference to a Debtor acting in accordance with its business judgment. *See*, *e.g.*, *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonable business); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

12.

The Debtor respectfully suggests that the proposed credit transaction is fair and reasonable, and moreover, necessary to preserve the value of the estate (or protect it from diminishment). The credit to be incurred effectively refinances an existing debt for a lower carrying cost. Simply put, from the Debtor's perspective, it is swapping out one lender for another without providing additional security. In return, the Debtor hopes to save costs associated with carrying such debt through the sale process. No creditor having a lien on property will have its lien impaired, and the Debtor does not propose to grant additional collateral otherwise not subject to a lien to secure repayment of the credit obligation. The Debtor does not believe it can gain more favorable terms from any party, much less obtaining unsecured credit on short notice. Given that the sale of the Hangar Lease is scheduled for a little over a month from the filing of this Motion, the Debtor does not believe that any commercial lender would be interested in offering better terms for, effectively, one month of interest, and any costs associated with such borrowing may outweigh any benefits.

13.

Under the circumstances, the Debtor believes allowing it to refinance its present obligations to BTR through borrowing from Callais on the terms set forth herein to be an appropriate and wise use of its business judgment.

**WHEREFORE**, the Debtor prays it be authorized to incur credit from Callais in an amount sufficient for it to refinance the debt owed by the Debtor to BTR on the terms and conditions stated herein. The Debtor prays for all such other relief deemed equitable and just.

Respectfully submitted by:

**STEWART ROBBINS & BROWN, LLC**

By: **/s/ P. Douglas Stewart, Jr.**
**P. Douglas Stewart, Jr. (La. Bar No. 24661)**
**William S. Robbins (La. Bar No. 24627)**
**Brandon A. Brown (La. Bar No. 25592)**
One American Place
301 Main Street, Suite 1640
Baton Rouge, LA 70801
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

***Attorneys for W Resources, L.L.C.***